IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CT-03315-M

JAMUEL EWING,

        Plaintiff,

v.

OFFICER TOBY, et al.,

        Defendants.

ORDER

This cause is before the court on defendants' pending motion for summary judgment. Mot. [D.E. 57]. For the reasons discussed below, the court grants the motion.

Relevant Procedural History:

On October 18, 2021, Jamuel Ewing ("plaintiff"), a state inmate, proceeding without prepayment of fees, filed *pro se* an unverified complaint under 42 U.S.C. § 1983. [D.E. 1, 2, 6].

Plaintiff alleges: at Maury C.I. on September 18, 2020, Unit Managers Burne and Harris and Officers Toby, Patton, and Riggs violated his Fifth, Eighth, and Fourteenth Amendment rights when they used excessive force against him "for no apparent reason"; a taser was discharged in his groin area and he suffered deep cuts over his left eye and left upper lip; despite his injuries, defendants prevented him from receiving medical treatment; "he placed a grievance and it got confiscated cause he never heard from it [sic]"; and Maury C.I. has a reputation for "restricting certain inmates' medical documents due to excessive force being used out of (Retalitation) [sic]." See Compl. [D.E. 1] at 1, 3–7. For relief, he seeks, *inter alia*, compensatory damages. Id. at 8.

On June 6, 2022, the court allowed plaintiff's Eighth Amendment excessive force and deliberate indifference claims to proceed, but dismissed his other claims. See Order [D.E. 7].

On March 13, 2023, the defendants – now correctly identified as Khilil Tolbert, Roberto Pagan, Joshua Barnes, Dexter Harris, and Eric Riggs – answered the complaint. [D.E. 18].

On June 30, 2023, the court's June 23, 2023, order extending the dispositive motions deadline was returned as undeliverable. See [D.E. 32] (noting plaintiff was "no longer here").

On July 19, 2023, defendants moved for an order to show cause. Mot. [D.E. 33].

On July 24, 2023, the court dismissed the action without prejudice for failure to prosecute, denied as moot defendants' motion to show cause, and directed the clerk to close the case. See Order [D.E. 34]. The court entered judgment the following day. See J. [D.E. 35].

On July 31, 2023, the court's order of dismissal and judgment also were returned as undeliverable. See [D.E. 36] (noting plaintiff was "no longer here"). Also on that date, the court received a notice from plaintiff that he was in federal transit. See [D.E. 37].

On September 11, 2023, plaintiff filed a notice of change of address and the court provided plaintiff a courtesy copy of the docket at his new address. See [D.E. 38].

On December 1, 2023, plaintiff filed a motion self-styled as "Summary Judgement Rule 56(e) and Default of the Defendants for not answering in a timely fashion [sic]." Mot. [D.E. 39].

On April 9, 2024, the court denied the December 1, 2023, motion. See Order [D.E. 41].

On April 29, 2024, plaintiff filed what the court construed as a motion to reopen the case. See Mot. [D.E. 42].

On June 24, 2024, the court granted the motion to reopen. Order [D.E. 43].

On July 29, 2024, plaintiff moved to subpoena a witness and for a trial date or referral to arbitration. See Mot. [D.E. 45].

On August 16, 2024, plaintiff moved for summary judgment or default. Mot. [D.E. 49].

On August 20, 2024, plaintiff moved to amend his complaint. See Mot. [D.E. 50] (seeking to add claims of felony kidnapping and felonious assault, and to add as defendants the State of North Carolina, the "City of Maury [sic]," and the "County of Hookerton [sic]").

On September 24, 2024, plaintiff filed a motion self-styled as a "motion for summary judgment[,] motion for arbitration, motion for court to rule on all the waylaying tactics of the defendants and that time is up the court rule in favor of the plaintiff [sic]." Mot. [D.E. 53].

On October 25, 2024, the court denied plaintiff's various motions. See Order [D.E. 56].

On November 8, 2024, defendants moved for summary judgment, Mot. [D.E. 57], and filed a statement of material facts [D.E. 58], an appendix [D.E. 59], a memorandum [D.E. 60], proposed sealed exhibits [D.E. 61, 62, 63], a motion to seal, Mot. [D.E. 64], and a motion for leave to manually file a video exhibit, Mot. [D.E. 65].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam) ("Roseboro"), the court notified plaintiff about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 66].

On November 13, 2024, plaintiff moved for an order to show cause. Mot. [D.E. 67].

On November 15, 2024, the court granted defendants' motions to seal and for leave to manually file a video exhibit, and denied the motion for an order to show cause. Order [D.E. 68].

On December 2, 2024, plaintiff moved for a preliminary injunction. Mot. [D.E. 69].

On December 19, 2024, the court denied plaintiff's motion for a preliminary injunction but extended time for him to file any response to the motion for summary judgment. Order [D.E. 73].

On January 29, 2025, plaintiff filed a response. [D.E. 74].

On February 25, 2025, plaintiff filed a self-styled "Notice of Bad Faith [sic]." [D.E. 75].

3

Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Discussion:

Defendants argue, *inter alia*, that plaintiff failed to exhaust his available administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), before filing this action. See Defs.' Mem. [D.E. 60] at 7–8, 10–15.

The PLRA states, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in

4

court."); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Successful exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (citation, alteration, and internal quotation marks omitted).

PLRA administrative exhaustion, however, is mandatory only if the grievance procedure is "available." Ross v. Blake, 578 U.S. 632, 642 (2016) ("Ross"). Grievance procedure is not "available" when: (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 643–44; see also Griffin v. Bryant, 56 F.4th 328, 335–39 (4th Cir. 2022); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

Failure to exhaust administrative remedies is an affirmative defense that defendants generally must plead and prove. See Jones, 549 U.S. at 216–17; Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017); Custis v. Davis, 851 F.3d 358, 361–63 (4th Cir. 2017).

The North Carolina Department of Public Safety ("DPS"), now known as the North Carolina Department of Adult Correction ("DAC"), has a three-step inmate grievance Administrative Remedy Procedure ("ARP"). See Moore, 517 F.3d at 721–22; see also Harris v.

5

Midford, No. 1:10-CV-263-RJC, 2011 WL 1601446, at *2 (W.D.N.C. Apr. 27, 2011) ("North Carolina prisoners can satisfy the [PLRA's] exhaustion requirement by completing all three of the steps of the inmate grievance process, which culminates in the rendering of a decision upon the prisoner's appeal by the North Carolina Inmate Grievance Resolution Board.").

The ARP first encouraged informal resolution. See Defs.' App., Ex. 15, [D.E. 59-15] at 1 (DPS Policy and Procedures, Chapter G, § .0301(a)). If informal resolution was unsuccessful, the inmate could submit a written grievance on Form DC-410. Id. at 7 (§ .0310(a)(1)). Within three days of submission, a screening officer reviewed the grievance to "decide whether it should be accepted, rejected, or returned." Id. (§ .0310(a)(4)). If unsatisfied with the Step-1 decision, the inmate could request relief from the Facility Head. Id. at 8 (§ .0310(b)(1)). If unsatisfied with a Step-2 decision, the inmate could "appeal to the Secretary of Public Safety through the Inmate Grievance Examiner" ("IGE"). Id. at 9 (§ .0310(c)(1)). The decision by the IGE, "or a modification by the Secretary of Public Safety," was the final step of the ARP. Id. (§ .0310(c)(6)).

Kimberly D. Grande declares, *inter alia*: Grande is Executive Director of the Inmate Grievance Resolution Board ("IGRB"); the applicable ARP was in effect from August 1, 2013, to September 30, 2023; the ARP establishes a three-step review process for offender grievances and appeals; administrative exhaustion is not complete until the IGRB completes Step 3 review of the grievance appeal and issues an order; and, from June 1, 2000, to September 1, 2021, plaintiff did not fully exhaust any grievances. See Defs.' App., Ex. 17, Grande Decl. [D.E. 59-17] at ¶¶ 1–11.

Leslea Dudley declares, *inter alia*: as of September 18, 2020, Dudley was a Lieutenant III at Maury C.I.; Dudley is familiar with the grievance policy; Dudley has access to, and has reviewed, plaintiff's records; the grievance policy was in place while plaintiff was at Maury C.I.;

6

at all times while he was confined at Maury C.I., plaintiff had access to grievance forms and the grievance policy, but he never submitted a grievance related to the allegations in his complaint; plaintiff never asked Dudley if he could file a grievance related to his September 18, 2020, allegations; Dudley would have provided plaintiff a grievance form if he had asked; Dudley would not have prevented plaintiff from filing a grievance and has never prevented an inmate from following the grievance process; Maury C.I. uses the DPS Incident Management System as part of its prison management operations; "an incident search of plaintiff reveals no incidents related to plaintiff, including no incident related to the allegations set forth in plaintiff's complaint"; on September 18, 2020, there was an altercation at Maury C.I. where several inmates engaged in a riot resulting in the assault on prison officials; "although plaintiff was a non-participant, he refused to return to his bunk upon request and was placed in restrictive housing for violating sections A02 and B25 of the offender disciplinary procedures in place on that date"; after an investigation into the incident on September 18, 2020, plaintiff was found guilty of violating A02 and B25 of the offender disciplinary procedures. See Defs.' App., Ex. 10, Dudley Decl. [D.E. 59-10] at ¶¶1–15.

Defendants Tolbert, Pagan, Harris, and Riggs declare they have no knowledge of plaintiff filing a grievance as to the incident on September 18, 2020, and all defendants declare that, as correctional officers or unit managers, they have "no authority to confiscate grievances or access, alter, modify, or destroy medical records." See Defs.' App., Ex. 4, Tolbert Decl. [D.E. 59-4] at ¶12; id., Ex. 5, Pagan Decl. [D.E. 59-5] at ¶13; id., Ex. 6, Barnes Decl. [D.E. 59-6] at ¶8; id., Ex. 7, Harris Decl. [D.E. 59-7] at ¶13; id., Ex. 8, Riggs Decl. [D.E. 59-8] at ¶11.

Here, plaintiff did not file declarations in opposition to defendants' motion for summary judgment despite receiving Roseboro notice and having an opportunity to do so. See Celotex,

7

477 U.S. at 324; cf. Richardson v. Clarke, 52 F.4th 614, 623–24 (4th Cir. 2022); Pledger v. Lynch, 5 F.4th 511, 525–27 (4th Cir. 2021). Instead, he merely relies on the allegations in his unverified complaint. Cf. Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021).

Plaintiff acknowledges on the face of his unverified complaint that he failed to exhaust his administrative remedies before filing this action. See Compl. [D.E. 1] at 8. Plaintiff baldly alleges that "he placed a grievance[,] and it got confiscated cause [sic] he never heard from it [sic]," id. at 7, and that he "placed in (2) two grievances on (2) different dates at Maury C.I.," but "he never received neither one to this very day [sic]." Id. at 8. Plaintiff's other filings do not address exhaustion. See [D.E. 17, 21, 22, 23, 37, 38, 39, 40, 42, 49, 50, 53, 67, 69, 70, 74, 75].

In short, the bald allegations in the unverified complaint, without more, fail to show that the ARP was "unavailable" to plaintiff within the meaning of Ross, 578 U.S. at 643–44, and are insufficient to defeat defendants' motion for summary judgment, see Fed. R. Civ. P. 56(e); Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) ("conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion"); see also Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018) (noting, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him" (citations omitted)); Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (finding, if a defendant shows a prisoner did not use available administrative remedies, the burden "shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him"); Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011) ("Once a defendant proves that a plaintiff failed to exhaust, however, the onus

8

falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials."); Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011) (per curiam) (unpublished) (noting a plaintiff bears the burden of showing the unavailability of administrative remedies (citing Moore, 517 F.3d at 725)); cf. Griffin, 56 F.4th at 335–39.

After considering the record evidence and the reasonable inferences drawn therefrom in the light most favorable to plaintiff, see Scott, 550 U.S. at 378, defendants have met their burden of showing the absence of a genuine issue of material fact regarding plaintiff's failure to exhaust administrative remedies as to his instant claims before filing this action, Celotex, 477 U.S. at 325; see Jones, 549 U.S. at 216–17; Wilcox, 877 F.3d at 167. As to the purported "unavailability" of the ARP, however, plaintiff fails to "come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587 (emphasis and quotation omitted).

Accordingly, defendants are entitled to summary judgment, Anderson, 477 U.S. at 249; see Jones, 549 U.S. at 211; Woodford, 548 U.S. at 85, and, as the action is dismissed without prejudice, see Moss v. Harwood, 19 F.4th 614, 623 n.3 (4th Cir. 2021) (collecting cases), the court need not address defendants' alternative arguments in support of their motion for summary judgment.

## Conclusion:

In sum, the court: GRANTS defendants' motion for summary judgment [D.E. 57]; DISMISSES WITHOUT PREJUDICE the action due to plaintiff's failure to exhaust administrative remedies; and DIRECTS the clerk to close the case.

SO ORDERED this 6th day of March, 2025.

RICHARD E. MYERS II
Chief United States District Judge